FILED & JUDGMENT ENTERED
David E. Weich

Dec 07 2009

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

_____
J. Craig Whitley
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| In re:<br><br>**PAUL KENNETH MALOY**<br>**and MARGARITTE ELIZABETH**<br>**MALOY**<br>                Debtors | Bankruptcy No. 07-30813<br>(Chapter 7) |
| **PAUL KENNETH MALOY and**<br>**MARGARITTE ELIZABETH**<br>**MALOY, Individually, and**<br>**LANGDON M. COOPER, Trustee in**<br>**Bankruptcy for PAUL KENNETH**<br>**MALOY and MARGARITTE**<br>**ELIZABETH MALOY**<br><br>                Plaintiffs<br><br>        vs.<br><br>**P. WAYNE SIGMON and GRAY,**<br>**LAYTON, KERSH, SOLOMON,**<br>**SIGMON, FURR & SMITH, P.A.**<br><br>                Defendants | Adv. Proceeding No. 09-3058<br><br><br><br>**MEMORANDUM OPINION**<br>**APPROVING**<br>**COMPROMISE SETTLEMENT**<br>**OF CONTROVERSY**<br>**AND DISMISSING ADVERSARY**<br>**PROCEEDING** |

**THIS CAUSE** coming on to be heard on 3 December 2009, after due notice to all parties and a hearing, on Motion of Langdon M. Cooper, Trustee in Bankruptcy

(hereinafter the "Trustee") for the parties identified above as the Debtors (hereinafter the "Debtors"), by and through counsel, for approval of compromise settlement with the Defendants; and it appearing that due notice of the Motion was given to all parties in interest, and that no objections were filed; and it further appearing to the Court after a thorough review of the record that the settlement is in the best interest of the estate and should be approved;  the Court finds and concludes as follows

   1. A Voluntary Petition Under Chapter 7 of the United States Bankruptcy Code (the "Bankruptcy Code") was filed by the Debtors on 18 April 2007 (the "Petition Date") in the United States Bankruptcy Court for the Western District of North Carolina (the "Court").

   2. On 13 April 2009 the Debtors filed this adversary proceeding, with the Trustee joining as a Plaintiff solely to assert that any recovery was property of the estate (the "Adversary") seeking, *inter alia*, to recover funds under Section 542 of the Bankruptcy Code for the benefit of the estate.  The Debtors alleged as grounds for recovery from the Defendants that the Defendants committed malpractice in advising the filing of the base bankruptcy case by not correctly determining that the home of the Debtors was owned solely by the male Debtor and not as tenancy by the entireties by both Debtors.  The Debtors allege, *inter alia*, that had they understood the nature of how they owned the home they occupy, and the implications which arise from the posture of the present base case which exposes the home to sale by the trustee, that they should have been advised not to file a bankruptcy case.  The Debtors contend that had they not filed their bankruptcy case that as a practical matter they could have lived out their lives in the home as no creditor would foreclose a small judgment lien when a first lien mortgage and homestead exemption existed.  The Defendants deny all allegations of the Debtors.

   3. The Adversary is seriously contested and discovery has not yet begun.  Each side has stated that it will appeal any loss to the Fourth Circuit.  The Court estimates it may take up to two years to complete the litigation.

   4. The only assets of the Debtors' base bankruptcy case are the claim in this Adversary Proceeding and the home which is owned by the male Debtor.[1]  There are no

---

[1] After the base bankruptcy case was filed the Debtors learned that the home could be sold by the Trustee.  The Debtors then without the knowledge of the Trustee or the Defendants hired another attorney to draft a deed to the home creating a tenancy by the entireties.  The Trustee subsequently discovered this avoidable transfer and filed a separate adversary proceeding against the Debtors to avoid the Section 549 post-petition transfer of the home.  Judgment was entered in the Trustee's favor, and in order to be certain that insurance remained on the home the Court ordered the home to be reconveyed to the male Debtor, not the Trustee.  The Trustee has filed the face of the Debtors' bankruptcy petition in the county real estate records which has the effect of a Notice of *Lis Pendens*.  The Trustee is an additional named insured on the Debtors' homeowners policy and the Debtors are current in mortgage, insurance and property tax payments.  As a result of the 549 transfer, the Debtors lost all rights in this bankruptcy

funds in the estate, although an asset of the estate is the home in which the Debtors and their child reside and which the male Debtor owns. The home is appraised at $160,000 and is subject to a mortgage in the current amount of $60,000. After subtracting the mortgage payoff and a realtor's commission there appears to be about $90,000 in equity which could be used to pay the administrative and general unsecured claims in this estate. There are no priority claims. Other than the secured and administrative claims, in this estate there are three allowed general unsecured claims -- $16,685.09 owed to eCAST Settlement Corporation, $6,054.72 owed to Discover Bank and $9,839.26 owed to Citibank. In addition the Trustee's general counsel Mullen Holland & Cooper is currently owed in excess of $25,000 and his special counsel Lisa Godfrey is currently owed in excess of $10,000. The Trustee's attorneys' fees would at the end of the day likely exceed $50,000 in the aggregate and the Trustee's commission would be about $8,000. In a balancing of the interests of the creditors and the Debtors, the Court has ordered the Trustee to stand down and not sell the home of the Debtors until this Adversary is determined. If the Debtors succeed in the Adversary, that could generate funds sufficient to pay the allowed administrative and general unsecured claims of the estate and the Debtors would retain their home as a surplus asset in the case. If the Debtors do not prevail in the Adversary, then the Trustee would sell the home and use the net equity to pay the claims of the estate, possibly in full, but that is by no means certain because of the uncertainty of the amount of the administrative claims, the uncertainty of the amount that could be recovered as damages in the Adversary and the uncertainty of the eventual sale price of the home if the Trustee were forced to sell it.

   5.  The bottom line is that if this Adversary is not settled at this time, it is very likely that it will be at least two years before the Adversary is completed and the claims in the estate are paid, and it is impossible to say with any degree of certainty what the dividend percentage would be on the general unsecured claims.

   6.  Based upon the foregoing, the Plaintiffs and Defendants have agreed to settle the Adversary (the "Settlement"), subject to consideration and approval of the Court after notice and a hearing. The basic terms of this proposed Settlement are as follows. Once a final Order is entered by the Court approving this Settlement:

    a. The Defendants will within ten days of the expiration of the appeal period of the Order approving the Settlement pay the Trustee the sum of $16,289.54 which the Trustee will in turn use to make immediate payment to the three general unsecured claimants in the amount of 50% of the principal amounts of their allowed claims.

    b. The Defendants will also within ten days of the expiration of the appeal period of the Order approving the Settlement pay the Trustee an additional sum of $5,500

---

case to claim an exemption in the home and the Trustee also has an indefinite extension to object to the discharge of the Debtors.

which the Trustee will in turn use to make immediate payment to his special counsel, Lisa Godfrey.

      c. The Defendants will also within ten days of the expiration of the appeal period of the Order approving the Settlement pay the Trustee an additional sum of $699.50 which the Trustee will use to reimburse himself for $500.00 he has paid the Court in filing fees and $199.50 in accrued miscellaneous out-of-pocket costs.

      d. The Trustee and his general counsel, Mullen Holland & Cooper P.A. will waive all fees in the case – a total waiver of more than $25,000 in accrued fees.

      e. The Trustee's special counsel Lisa Godfrey will waive approximately 50% of her accrued fees.

      f. The Debtors current counsel, Shuford Hunter PLLC, will waive all their current accrued fees.

      g. The Plaintiffs and Defendants will exchange full general cross releases.

      h. The Adversary will be dismissed with prejudice.

      i. The Debtors will receive their discharge in bankruptcy.

      j. The home of the Debtors will not be sold by the Trustee and will be deemed abandoned to the Debtors on the closing of the base case, free and clear of any claim of or by and through the estate, and subject only to the existing mortgage, and their general rights in the future to assert their lawful homestead exemption.

      k. The Debtors' base bankruptcy case will be closed.

      7.    The Trustee submits that the proposed Settlement is fair and reasonable and in the best interest of the estate of the Debtors and its creditors and this Court concurs. At first blush the case seems simple – it appears that today the Trustee could sell the home of the Debtors and pay the three general unsecured creditors in full plus pay the administrative claims in full. But the Debtors elected to file their malpractice action and the Court subsequently ordered the Trustee to stand down and not sell the home of the Debtors until the Adversary is determined. The Court elected to balance the rights of all parties to this case by permitting the Debtors to litigate this Adversary and try to save their home. The problem is that this process will very likely take at least two years. And then the amount of the dividend the three general unsecured creditors might receive is anybody's guess. The answer to the issue of whether the settlement is in the best interest of the three general unsecured questions is essentially – is it better for the three general unsecured creditors to receive an immediate payment equal to 50% of the principal amounts of their claims, or to wait at least two years (during which time administrative costs will accrue and will be paid in full as a first priority under the Bankruptcy Code) and even then possibly not receive the 50% dividend which these general unsecured creditors can receive today? The Court has determined and concludes that this proposed

immediate, *albeit* discounted, cash payment is clearly in the best interests of the three general unsecured creditors.  The Trustee has been a panel Chapter 7 trustee for more than 30 years, and to make it clear that the Trustee believes this case should be settled, and that this is the best result for all concerned, he and his law firm have offered to waive all their fees, and that is in addition to the approximate waiver of 50% by Lisa Godfrey and a full waiver by Shuford Hunter PLLC.

8.   Under Rule 9019 of the Federal Rules of Bankruptcy Procedure, the Trustee must obtain court approval of the Settlement of any controversy arising in the administration of the estate.  Case law developed under that rule and former Bankruptcy Rule 919 has established what factors the court must consider in approving proposed settlements.

9.   Courts generally favor settlement of controversies arising in the administration of a bankruptcy estate and deference is to be given to the responsible official's judgment in agreeing to the Settlement.  *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U. S. 414, 424 (1968); *In the Matter of Carla Leather, Inc.*, 44 B.R. 457, 465 (S.D.N.Y. 1984).  However, the court's decision whether or not to approve the Settlement must be based on an "informed and independent judgment as to whether a proposed compromise is fair and equitable." *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U. S. at 424.

10.  In forming this judgment, the Court has apprised itself of all facts necessary to evaluate such factors as (i) the probabilities of ultimate success in litigation; (ii) the complexity of the litigation involved, and the expense, inconvenience and delay attending it; and (iii) the best interests of the creditors and deference to their reasonable views of the proposed Settlement.  *Id*; *In re Lion Capital Group*, 49 B.R. 163, 175 (S.D.N.Y. 1985); *In the Matter of Carla Leather*, 44 B.R. at 465-466.  This standard of inquiry, however, "does not portend substitution of the court's judgment for that of the Trustee.  Nor is the court 'to decide the numerous questions of law and fact [presented] but rather to canvass the issues and see whether the settlement fall[s] below the lowest point in the range of reasonableness'." *In the Matter of Carla Leather, Inc.*, 44 B.R. 465 (quoting *In re W. T. Grant & Co.*, 699 F.2d 559, 608 (2d Cir. 1968), *cert. denied sub. nom. Cosoff v. Rodman*, 464 U.S. 822 (1984)).  The overriding concern of the Court is to determine, giving proper deference to the judgment of the Trustee, whether the Settlement is proper under law and whether it is fair and equitable and in the best interest of all interested parties.  And the Court so concludes.

11.  Perhaps the most important factor in determining the adequacy of a proposed settlement is the probability of success the estate would have if it pursued collection of its claim in this Adversary against the likelihood that the estate would realize substantially less than the amount of a judgment for its claim, instead of settling the claim.  The very purpose of a settlement is to avoid the risks of litigation, or

5

collection of the judgment, in the face of "sharply contested and dubious issues," or the likelihood of little realization on collection. *In the Matter of the New York, New Haven and Hartford Railroad Company*, 632 F.2d 305, 307 (2d Cir. 1951)). Thus, in evaluating the adequacy of settlement agreements, courts have acknowledged the wisdom of settling those claims for which proper resolution is disputed in the case law, or the diminished ability to collect. *In the Matter of Carla Leather, Inc.*, 44 B.R. at 468. The wisdom of settling claims that assert novel legal principles must be even more assured. Here the Trustee believes, and the Court concludes, that this litigation of this Adversary may very well generate less benefit to the estate and its creditors due to risk of litigation and increased attorney fees and court costs, than would the proposed Settlement with its immediate and certain payment of the 50% dividend to the three general unsecured creditors.

it is, therefore,

**ORDERED** that the Trustee's Motion for Approval of Settlement will be **GRANTED** and the Court will, pursuant to Fed. R. Bankr. P. 9021, enter a separate Judgment and Order to that effect;

This Order has been signed electronically. The judge's signature and court's seal appear at the top of the Order.

United States Bankruptcy Court

6